STATE OF MAINE                                   UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss.                                         Nos. CR-14-5126
                                                            CR-14-5785
                                                            CR-14-7820

STATE OF MAINE

v.                                                   ORDER

RICHARD LABRANCHE,

        Defendant


Before the court is the State's motion for an order authorizing the administration of psychiatric medication to defendant Richard LaBranche in order to restore him to competency so that he can stand trial. The court held a hearing on June 22, 2016 and the parties thereafter were given an opportunity to file post-hearing briefs. Counsel for defendant filed a brief on July 11, 2016.

Prior Proceedings

Mr. LaBranche was found by the court (Kelly, J.) to be incompetent to stand trial on September 29, 2015. The forensic evaluations in the record reflect that Mr. LaBranche has repeatedly been evaluated and not found to be competent and that in the opinion of the evaluators he could only be restored to competence by the administration of antipsychotic medication. Mr. LaBranche, who is at Riverview, has consistently and adamantly refused to take any such medication.

After a hearing on April 8, 2016 the court determined based on the testimony of Dr. Elise Magnuson and Dr. Robert Riley that, absent medication, there would not exist a substantial

probability that Mr. LaBranche could be restored to competency in the foreseeable future. *See* order of April 8, 2016.[1] However, based on the testimony and the forensic reports of Drs. Magnuson and Riley, the court continued the hearing to allow the Commissioner to consider whether to provide the court with formal notice under 15 M.R.S. § 106(2) that Mr. LaBranche was not consenting to treatment and was unlikely to be restored to competency without the administration of psychiatric medication over his objection. *Id.*

Formal notice was provided in a Psychiatric Report dated April 13, 2016 signed by Dr. William Nelson, a psychiatrist who at the time was acting both as Clinical Director and Acting Superintendent of Riverview. That notice stated that the criteria in 15 M.R.S. § 106(2)(A)-(E) are met in this case.

Thereafter the prosecuting attorney filed a motion pursuant to 15 M.R.S. § 106(3)(A) seeking court authorization for involuntary medication of Mr. LaBranche. Because of difficulties in the court's schedule and in scheduling the medical professionals involved, a hearing on the State's motion was eventually held on June 22.

Pending Cases against Mr. LaBranche

In Docket CR-14-5126 LaBranche is charged with a felony Class C OUI, alleged to have occurred on July 31, 2014. This is charged as a felony based on two prior OUI convictions within the previous 10 years, one in 2007 and one in 2013. He is also charged with misdemeanor OAS and misdemeanor criminal speeding alleged to have occurred on the same date.[2]

---

[1] Dr. Magnuson is a psychologist and Dr. Riley is a neuropsychologist.

[2] The Class C OUI carries a maximum sentence of five years and a mandatory minimum sentence of 30 days with a mandatory 6 year license suspension. 29-A M.R.S. § 2411(5)(C). The OAS is charged as a third offense OAS based on OUI suspensions, carrying a maximum sentence of 6 months and a

In Docket CR-14-5785 LaBranche is charged with a misdemeanor bail violation and a misdemeanor charge of burning without a permit, alleged to have occurred on August 12, 2014.

In Docket CR-14-7820 LaBranche is charged with a misdemeanor OAS, alleged to have occurred on November 30, 2014, and an accompanying bail violation.[3]

Piecing together information from the three files, LaBranche was originally released on bail in CR-14-5126, was subsequently held in custody on a motion to revoke based on the OAS charge in CR-14-7820 from November 16, 2014 to January 20, 2015, when he was readmitted to bail. LaBranche was rearrested on July 14, 2015 for failure to appear and remained in custody at the jail until he was committed to the custody of the Commissioner after he was found incompetent to stand trial on September 29, 2015.

LaBranche's Prior Driving Record

In addition to the 2 prior OUI convictions within the preceding 10 years (one in 2007 and one in 2013) that elevate the current OUI change against Mr. LaBranche to a felony, his certified driving record demonstrates that Mr. LaBranche has three other OUI convictions – in 1984, 1986, and 2002.

He also has driving to endanger convictions in 1985 and 1993. In the incident that led to the 1985 driving to endanger conviction, Mr. LaBranche had a blood alcohol level of .02 or more, which resulted in a suspension because Mr. LaBranche was still a juvenile. In the incident that led to the 1993 driving to endanger conviction, Mr. LaBranche received a suspension for

mandatory mimimum sentence of 60 consecutive days with a mandatory consecutive suspension of one to three years. 29-A M.R.S. § 2412-A(3)(A)(2).

[3] This is also charged as OAS based on an OUI suspension but without any alleged priors. If convicted on that charge, Mr. Labranche would face a maximum sentence of six months and a mandatory minimum sentence of a 7-day consecutive sentence with a mandatory consecutive suspension of one to three years. 29-A M.R.S. § 2412-A(3)

3

refusing to take a blood alcohol test – which qualifies as an "OUI offense" pursuant to 29-A M.R.S. § 2401(11).

Mr. LaBranche also received another suspension for refusing to take a blood alcohol test on November 25, 2012 in connection with a one-car accident in which an injury was sustained. His driving record also shows a two car accident in which injury was sustained in 2007, a two car accident where damage was sustained in 2001, and a one car accident where injury was sustained in 1986. Finally he has two misdemeanor convictions for criminal speeding, one in 2005 and one in 1983.[4]

Findings Based on June 22 Hearing

Under 15 M.R.S. § 106, the Court may authorize involuntary psychiatric medication only if it finds by clear and convincing evidence

(1) that important state interests are at stake in restoring Defendant's competence;

(2) that involuntary medication will further important state interests in that the medication proposed

(a) is substantially likely to render the defendant competent to proceed and

(b) is substantially unlikely to produce side effects that would interfere with the defendant's ability to assist the defense counsel in conducting the defendant's defense;

(3) that involuntary medication is necessary to further important state interests;

(4) that any alternative less intrusive treatments are unlikely to achieve substantially the same results; and

(5) that the administration of the proposed medication is medically appropriate, as it is in defendant's best medical interest in light of defendant's medical condition.

---

[4] The certified driving record does not reflect any past OAS convictions even though count II of the indictment in CR-14-5126 charges that Mr. Labranche has two prior "OAS for OUI" convictions.

4

15 M.R.S. §§ 106(3)(B), (4). These statutory requirements essentially mirror the standards set forth in the U.S. Supreme Court's decision in *Sell v. United States,* 539 U.S. 166 (2003).

Admitted without objection as evidence at the June 22 hearing were three evaluation reports relating to competency dated September 16, 2015, November 20, 2015 and February 1, 2016 by Dr. Magnuson and two forensic reports dated March 21, 2016 and May 16, 2016 by Dr. Riley.[5] The April 13, 2016 psychiatric report notifying the court that LaBranche met the criteria for involuntary medication set forth in 15 M.R.S. § 106(2) was also admitted in evidence. The authors of those reports testified on June 22, and counsel for LaBranche had an opportunity to cross-examine them on the contents of the reports. Miriam Davison, a psychiatric nurse practitioner assigned to LaBranche's unit, also testified at the June 22 hearing.

Based on the forensic reports and on the testimony of Dr. Magnuson, Dr. Riley, Dr. Nelson, and Ms. Davison, the court finds by clear and convincing evidence and without difficulty that the factors in §§ 106(3)(B)(2), 106(3)(B)(4), and 106(3)(B)(5) have been met. Counsel for LaBranche has not contested those findings.

Richard LaBranche has a diagnosis of Schizoaffective Disorder, BiPolar type but also appears to meet the definition for a delusional disorder. He is actively psychotic. He exhibits irritability and psychomotor agitation. His thought process is disorganized, he appears to be responding to auditory hallucinations, and he expresses a number of paranoid delusions. He has been prescribed psychiatric medications and has consistently refused to take them.[6] He is unable to engage in linear conversations during treatment team meetings without becoming agitated or

---

[5] After the June 22 hearing an additional forensic report from Dr. Riley (also dated June 22) was submitted. This evaluation – really an attempted evaluation because Labranche refused to speak to Dr. Riley – is not part of the evidentiary record but was discussed in Dr. Riley's testimony.

[6] Ms. Davison testified that Abilify had been prescribed because Labranche informed the staff that he had been given other medications, specifically Zyprexa, which he had not liked because it left him feeling sedated. Abilify is a milder antipsychotic than Zyprexa and does not have as much of a sedative effect.

5

leaving the room. Dr. Nelson expressed the view that LaBranche's illness is so severe at this time that he does not have the ability to participate in counseling or therapy even if he were willing to do so. In addition, although LaBranche has been hospitalized at Spring Harbor, he has refused to sign releases so that the Riverview staff can review the Spring Harbor records.

The court is specifically required to consider whether involuntary medication is substantially likely to render LaBranche competent to stand trial. 15 M.R.S. § 106(3)(B)(2)(a). Based on the testimony of Drs. Nelson, Magnuson, and Riley and their reports the court finds this criterion has been met. Dr. Nelson testified that the condition of 60-70 % of patients in LaBranche's situation demonstrate improvement from psychiatric medication. Only 10-15% show no improvement. The other 20-30 % show improvement but not improvement that would be termed clinically significant.

LaBranche's mother has told Riverview staff that LaBranche's condition was better when he was given antipsychotic medication in the past but she did not know which specific medications had been helpful. Dr. Nelson would propose to start with Zyprexa, which he regards as the most effective antipsychotic, and see how that goes. Other antipsychotics that do not have as much of a sedative effect would also be possible.

Pursuant to 15 M.R.S. § 106(3)(B)(2)(b) the court also finds by clear and convincing evidence that the involuntary medication proposed is substantially unlikely to produce side effects that would interfere with LaBranche's ability to assist defense counsel. Although some antipsychotic drugs leave patients feeling sedated and LaBranche has complained about that in the past, Dr. Nelson testified that the side effects would not be sufficient to interfere with LaBranche's defense, and the April 13, 2016 report states that medication is substantially unlikely to produce side effects that would significantly compromise LaBranche's ability to

6

assist in his defense. It also states that an improvement in his cognition may allow for more cooperative collaboration with his counsel as well as with his treatment team.

Other potential side effects would be carefully monitored as set forth in Dr. Nelson's testimony and in the April 13, 2016 report. Dr. Nelson testified that dangerous side effects are extremely rare but that LaBranche would be monitored for those as well.

Pursuant to 15 M.R.S. §106(3)(B)(4) the court finds based on the testimony at the June 22 hearing and the reports admitted in evidence that alternate less intrusive treatments are unlikely to achieve the same results. LaBranche has rejected all alternative offers of treatment and Dr. Nelson testified that in his current condition LaBranche does not have the ability to participate in counseling or therapy.

Pursuant to 15 M.R.S. § 106(3)(B)(5) the court finds, based on the testimony of Dr. Nelson, that the administration of the proposed medication is medically appropriate and is in LaBranche's best medical interests. As discussed above, LaBranche is currently actively psychotic, appears to be experiencing auditory hallucinations, and is delusional. He has been prescribed psychiatric medication, which is standard for the symptoms he presents, and reportedly showed improvement on such medication in the past.[7]

On the issue of how involuntary medication is administered, Dr. Nelson and Ms. Davison testified that the patient is given the choice to take the mediation and is told that if he does not, it will be administered via hypodermic. If the use of a hypodermic is necessary, that may involve

---

[7] As part of this order, the court shall direct that Spring Harbor provide records of any medications administered to Labranche and how that medication affected Labranche.

7

having several people hold the patient down. Ms. Davison testified, however, that in most cases this is only necessary once or twice and the patient then agrees to take the medication orally.[8]

Another issue raised at the hearing was whether LaBranche could be involuntarily medicated under some other circumstances. Pursuant to § 106(2), the Commissioner's notice should only be given if there is no basis for involuntary medication other than through the procedure specified in section 106. Dr. Nelson explained in his testimony that although Riverview would seek involuntary hospitalization of LaBranche if the charges against him were dismissed,[9] it was not certain that a civil commitment proceeding would be successful. In order to obtain a civil commitment order, a showing would have to be made that LaBranche's "recent actions and behavior demonstrate . . . a likelihood of serious harm." 34-B M.R.S. § 3864(6)(A)(1). "Likelihood of serious harm" is defined to mean recent threats of suicide or self-harm, recent violent behavior or conduct placing others in fear of serious physical harm, or a reasonable certainty that the person will suffer severe physical or mental harm. 34-B M.R.S. § 3801(4-A). Dr. Nelson testified that despite LaBranche's current state of psychosis, he may not pose a likelihood of serious harm under that definition.

Even if LaBranche were to be involuntarily committed, he could only be involuntarily medicated under two circumstances. The first, as testified to by Dr. Nelson, would be if a clinical review team agreed LaBranche met the conditions set forth in 34-B M.R.S. § 3861(4). The

---

[8] The court rejects the suggestion by counsel for the State that if involuntary medication is ordered, it could be given to Labranche orally without his knowledge. Dr. Nelson and Ms. Davison disagreed with that suggestion. In the court's view, even if the taste of the medication could be disguised, the surreptitious administration would be highly likely to destroy any trust that might otherwise be created between Labranche and Riverview staff.

[9] Dismissal would be the only alternative if the court did not order involuntarily medication, *see* 15 M.R.S. § 101(5)(A), and that statute provides that the appropriate authorities may then institute civil commitment proceedings. Dr. Riley's reports state that Riverview staff believe that Labranche meets the criteria for involuntary hospitalization but as discussed in Dr. Nelson's testimony, that is uncertain.

second would be if a court order were obtained pursuant to 34-B M.R.S. § 3864(7-A). Dr. Nelson had some doubts that these conditions could be met. For example, § 3861(4) would require that LaBranche lack decisional capacity to refuse. Whatever his other deficits, LaBranche's statements at the June 22 hearing – adamantly stating that his freedom would be impaired if involuntary medication were ordered – did not necessarily demonstrate that he lacks decisional capacity.

Important State Interests

The remaining statutory requirements are whether "important state interests are at stake in restoring defendant's competency" and whether "involuntary medication is necessary to further important state interests." 15 M.R.S. §§ 106(3)(B)(1) and (3). This requires an examination of whether the State has a sufficiently important interest to justify involuntary medication in this case.

The requirement that involuntary medication must further important state interests – codified in 15 M.R.S. §§ 106(3)(B)(1) and 106(3)(B)(3) – is derived from *Sell v. United States*, 539 U.S. at 179-81. Federal cases since *Sell* have focused on whether the crime with which the defendant is charged is sufficiently serious. *See, e.g., United States v. Evans*, 404 F.3d 227, 238 (4th Cir. 2005) (adopting standard that a crime carrying potential sentence of 10 years is sufficiently serious); *United States v. Burhoe*, 692 F.Supp.2d 137, 142-43 (D. Me. 2010) (possession of firearms by person previously committed to mental health institute sufficiently serious because defendant also faced state charge of aggravated attempted murder); *United States v. Dumeny*, 295 F.Supp.2d 131, 132 (D. Me. 2004) (possession of firearms by person previously

9

committed to mental health institute without additional charges not sufficiently serious despite 10 year potential sentence).

Looking just at the nature of the charges pending against Mr. LaBranche, the court would not find those to be sufficiently serious under the federal approach. Moreover, looking also at the issue of how long Mr. LaBranche has been in custody in comparison with the unsuspended portion of any sentence he might receive,[10] Mr. LaBranche has already been in custody, including time at Riverview, for approximately 15 months. Even with his lengthy prior history of OUI convictions and offenses, he would not necessarily receive a sentence with additional incarceration as the unsuspended portion of his sentence. Given his history but also considering his mental illness, Mr. LaBranche might receive a sentence in the range of five years with all but time served or 18 months suspended.

Whether the State has shown a sufficiently strong interest here therefore depends on Mr. LaBranche's driving record. In the court's view, Mr. LaBranche's driving record and history of OUI convictions constitute clear and convincing evidence that important state interests are at stake in restoring his competency and that involuntary medication is necessary to further important state interests. A person who is charged with OUI and has five prior lifetime OUI convictions and two additional OUI "offenses" in the form of refusals to submit to a blood alcohol test presents a serious risk to public safety that provides the State with sufficiently strong interest to justify involuntary medication under 15 M.R.S. §§ 106(3)(B)(1) and (3) and *Sell v. United States*. From Mr. LaBranche's record, including his history of accidents and speeding, he poses a significant risk of re-offending and his potential presence on the road in an intoxicated

---

[10] This was a factor mentioned by the U.S. Supreme Court in *Sell v. United States*. *See* 539 U.S. at 186.

state poses a serious danger of death or injury to himself and to any other motorists who may cross his path.

In *Sell v. United States* the Supreme Court considered dangerousness as a factor that could warrant involuntary medication but it was bound by the factual rulings of the courts below that the defendant in *Sell* was not dangerous. 539 U.S. at 184-85. In this case the potential dangerousness is apparent from Mr. LaBranche's record.

Counsel for LaBranche argues that the State can cancel Mr. LaBranche's license for medical reasons pursuant to 29-A M.R.S. §§ 1258-59. That may lessen the State's interest in obtaining a 6-year license suspension based on the felony OUI and additional lengthy suspensions based on the OAS for OUI charges, plus a habitual offender revocation that would likely follow if Mr. LaBranche were convicted on either the felony OUI or the misdemeanor OAS in CR-14-5126 and the OAS in docket CR-14-7820.[11] However, this does not lessen the State's interest here because Mr. LaBranche was allegedly driving while suspended in the incident leading to his felony OUI charge and was again allegedly driving while suspended while on bail as charged in CR-14-7820. Mr. LaBranche does not appear to be deterred by suspension of his driving privileges, and Mr. LaBranche's risk of re-offending by driving under the influence would continue to pose a serious risk to himself and other motorists whether or not his license has been suspended or revoked.

The court has already suggested that Mr. LaBranche might not receive additional incarceration if convicted but he could be given a five-year sentence all but time served suspended with two important probation conditions: (1) to take all prescribed medication – in order to stabilize his condition and to avoid self-medication with alcohol – and (2) to undergo

---

[11] With those convictions, given Mr. Labranche's 2013 OUI conviction, he would have three convictions within a five year period. 29-A M.R.S. § 2551-A(1)(A).

11

psychological and substance abuse counseling and treatment. Such a result would protect the public far more than dismissing the charges upon a finding of continued incompetence and therefore justifies involuntary medication necessary to make Mr. LaBranche competent and to bring him to trial.

Accordingly, it is ordered that Riverview is authorized to involuntarily medicate Mr. LaBranche, monitoring him carefully to avoid any side effects. If Mr. LaBranche experiences any harmful side effects. Riverview shall report that to the court and the involuntary mediation shall cease pending further order of the court.

It is further ordered that Spring Harbor Hospital shall provide Riverview with all records relating to any medication that has been administered to Mr. LaBranche in the past at Spring Harbor. Riverview shall assess those records to determine whether those would affect Riverview's treatment plan.

It is further ordered that Riverview shall report on Mr. LaBranche's status at the end of 60 and 120 days and shall advise the court whether, in its medical judgment, involuntary medication should continue and whether there has been improvement in his condition.


Dated: August _10_, 2016

Thomas D. Warren
Justice, Superior Court